THE STATE v. F. W. JOHNSON, Appellant.—63 S. W. (2d) 1000.

Court en Banc, October 19, 1933.

*Roy McKittrick,* Attorney-General, and *Franklin E. Reagan,* Assistant Attorney-General, for respondent.

WESTHUES, C.—We have adopted, with slight modifications, the following statement of the case, found in the State's brief:

"On September 5, 1931, the Prosecuting Attorney of Boone County, Missouri, filed in the Circuit Court an information in two counts charging appellant in the first count with forgery of a $15 check, and in the second count, with the uttering of said check to C. M. Robinson, operating the Columbian Hotel, Columbia, Missouri. The check was dated July 3, 1931, and was drawn on the Farmers Bank of Bowling Green, Missouri, and payable to appellant for $15 and purported to be signed and executed by H. B. Millerton.

"Appellant was accorded a preliminary hearing bound over to the Circuit Court for trial, and October 28, 1931, answered ready for trial; was duly tried and found guilty by a jury on the second count of uttering the forged check in question, but acquitted on the first count of actually forging the check. Timely motion for a new trial was filed, heard by the court, overruled, and appellant sentenced to four years in the State Penitentiary, and now brings this appeal.

"C. M. Robinson owned, lived at and operated the Columbian Hotel, Columbia, Missouri. She first became acquainted with the appellant March 15, 1931, when he began staying at the hotel. Appellant was a salesman, engaged in the manufacture and sale of Puro-Kake, an odor absorbing compound for ice boxes, and made the hotel his base of operations. Appellant left Columbia, Missouri, the latter part of June, 1931, and returned a few days later about July 3 or 4, 1931, at which time, he cashed the check in question at the hotel and with his wife left the hotel July 5, 1931, and asked that a room be reserved for his wife, son and daughter, who would be there in a few days. A check for $15 was tendered in payment of appellant's hotel bill, $10.34 and appellant received $4.66 in money. The check was endorsed in the presence of witness, C. M. Robinson, and had been filled out in the handwriting of the appellant with the exception of the signature, H. B. Millerton. The check was deposited in the Exchange National Bank, Columbia, Missouri, on the following Monday, July 7, 1931, from which bank it was returned, 'Protested' a few days later. Other checks drawn on other people had been cashed by appellant at this hotel and paid.

"The Notary Public, Mary Blondet, who protested this check, was Assistant Cashier of the Farmers Bank, a banking corporation of

Bowling Green, Missouri, and had lived at Bowling Green all of her life. She was acquainted with the names of various depositors in said bank and testified that in July, 1931, H. B. Millerton was not a depositor in said bank; that she never heard of anyone by that name in that County. The check and the protest notice were introduced in evidence without objection.

"Henry C. Carroll, Sheriff of Pike County, had lived in Pike County practically all of his life and was well acquainted in Edgewood, a small town, ten miles South of Bowling Green. A few days prior to the trial he went to Edgewood in an effort to serve a State subpoena on H. B. Millerton, but was unable to find any H. B. Millerton, and while there went to a small white, weather-boarded, frame house, the second house located on the right side of the road after you leave the highway going into Edgewood from Bowling Green and found a man living there by the name of Ogden.

"Appellant was arrested in Hannibal, Missouri, and returned by Deputy Sheriffs, Charles Whitworth and Harry Armstrong to Columbia, Missouri, for trial. On the road to Columbia, Missouri, appellant stated that he knew no one by the name of H. B. Millerton, but said he knew a man by the name of Middleton who was in the ice business at Bowling Green, Missouri. The following day appellant stated to Deputy Sheriffs Whitworth and Armstrong that he received the check in question from H. B. Millerton who lived in Edgewood, near Bowling Green, Missouri, and described Millerton's residence as a small, white, weather-boarded frame house, the second house located on the right side of the road after you leave the highway going into Edgewood from Bowling Green; that all of the check was in his handwriting except the signature, H. B. Millerton. This testimony of Charles Whitworth Deputy Sheriff, as to appellant's statements was corroborated by Harry Armstrong.

"All subpoenas issued for witnesses on the part of appellant and the State were introduced in evidence, but no subpoena had been issued for the defendant for the witness, H. B. Millerton. Appellant testified that he was forty-three years old, lived in Kansas City, Missouri; that his business was the manufacture and sale of Puro-Kake, a preparation to eliminate the contamination of food odors in refrigerators and that he sold said product in a number of cities in Missouri, and employed others as salesmen; that on the average he would sell from six to ten orders daily for cash on delivery; sometimes receiving checks, some of which were cashed at the Columbian Hotel; and on July 4th, he cashed the check in question at the Columbian Hotel, took his wife to Kansas City but returned to Columbian Hotel on the night of July 8, 1931, and left the next morning; and before leaving he reserved rooms at the hotel for the following week and left considerable clothing and Puro-Kake boxes there; that from Columbia he went to Hannibal, Missouri, where he lived with H. B.

Miller for about three weeks; that he received the $15 check in question July 3, 1931, for one hundred Puro-Kakes; that said sale was made in Bowling Green, Missouri, to Mr. Millerton, who had answered a blind ad; that he saw Millerton the first time on July 1st, and again on the morning of July 3rd in Bowling Green; that he delivered one hundred Puro-Kakes at Edgewood near Bowling Green to Millerton at a white house, the second from the corner after you turn off of the highway going into Edgewood, and received the check about 5:30 in the afternoon. Appellant further testified that he kept duplicate sale tickets of the sale to Millerton; that Millerton was a tall, slim fellow about six feet in height and wore glasses and had a little moustache. Appellant denied telling officers Whitworth and Armstrong that he did not know anyone by the name of Millerton, but that Millerton was waiting in an automobile in front of the white house when he delivered the Puro-Kake; that Millerton produced the blank check from his inside pocket, handed it to appellant, and appellant filled it out and handed it back to Millerton who signed it, H. B. Millerton; that Millerton put the Puro-Kakes in the back of his car parked in front of the little white house as appellant left him in Edgewood; that appellant knew H. B. Middleton and son of Bowling Green.

"Defense witness, W. B. Middleton of Bowling Green testified that he was in the ice business there and knew appellant since July 1, 1931; and that he lived in Bowling Green twenty years but did not know anyone by the name of H. B. Millerton. H. A. Miller of Hannibal, Missouri, testified that he knew appellant and identified certain sales tickets used in appellant's business; that he had worked for appellant but had not been paid for his work.

"In rebuttal, Ray Whitesides, Clerk of the Columbian Hotel, testified he knew appellant and that appellant's reputation for truth and veracity in the community was bad. Appellant's reputation for truth and veracity was also impeached by W. G. Hagerman, a minister and by four additional witnesses."

Appellant has not filed a brief in this court. We will look to the motion for new trial for points preserved for our review.

■ A number of the assignments of error pertain to the sufficiency of the evidence to sustain a conviction. The above statement of facts reveals that the evidence in the record was sufficient for the jury to find appellant guilty of uttering a forged instrument with intent to defraud, as denounced by Section 4183, Revised Statutes 1929. [State v. Thompson, 1 S. W. (2d) 151, 318 Mo. 623.]

■ Instruction No. 4 is assailed. It reads as follows:

"The jury are instructed that any verbal statements of the defendant that have been proven in this case, you may take them into consideration, with all the other facts and circumstances proven. What the evidence may show you, if anything, that the defendant

has said against himself, is presumed to be true, because against himself; but anything you may believe from the evidence the defendant said in his own behalf, you are not obliged to believe, but you may treat the same as true or false, just as you believe it true or false, when considered in its relation to all the other facts and circumstances in the case."

The specific objection made to this instruction is that it failed to inform the jury that defendant was entitled to what he said for himself, if true, and also failed to require the jury to consider the whole of any statement or statements made by defendant. The objection is well taken. In the State's brief the cases of State v. Sattley, 131 Mo. 464, l. c. 490, 33 S. W. 41; State v. Knowles, 185 Mo. l. c. 176, 83 S. W. 1083; State v. Hayes, 262 S. W. 1034, are cited as authorities holding the instruction, as given, to be in proper form. The instruction approved in the Knowles case embodied both of the elements that appellant asserts were omitted from Instruction No. 4, given in this case. The same is true of the Hayes case. [See 262 S. W. l. c. 1036 (5).] We fail to find any instruction quoted in the Sattley case from which it is claimed that Instruction No. 4 in this case was copied. The Sattley opinion refers to an Instruction No. 7, as having been approved so often that the court contented itself by simply citing three cases which approved similar instructions. They are, State v. Carlisle, 57 Mo. 102; State v. Brown, 104 Mo. 365, 16 S. W. 406; State v. Wisdom, 119 Mo. 539, 24 S. W. 1047. In the Carlisle and Wisdom cases the instructions are embodied in the opinions and contain the elements referred to. The instruction considered in the Brown case was not copied in the opinion. If, in criminal cases, trial courts deem it necessary to give an instruction with reference to statements made by a defendant, a proper form of such an instruction will be found in State v. Hamilton, 304 Mo. l. c. 30 and 31, 263 S. W. 127; State v. Glazebrook, 242 S. W. l. c. 933, (14). Instruction No. 4, now under discussion, has left in it all of the poison that is detrimental to a defendant, and contains none of the antidotes that are found in the approved instructions, which to some extent, at least, neutralize the poison. The instruction in this case told the jury that what defendant said against himself was presumed to be true. It did not tell the jury, as it should have, that defendant was entitled to the benefit of what he said in his own behalf, if true. The instruction permitted the jury to consider only a part of defendant's statement. The instruction should have required the jury to consider all of defendant's statements together and to consider them in view of the circumstances under which they were made. The statement, alleged to have been made by appellant to the officers, that he did not know H. B. Millerton, when considered alone, was very damaging. If this statement is considered with the other statements, alleged to have been made, it is not nearly so inconsistent with appellant's in-

nocence. According to appellant he had only seen Millerton a few times and knew very little about him. Under these circumstances the error in the instruction cannot be considered harmless, and requires a reversal of the case.

■ Appellant offered to introduce in evidence a number of sales tickets which were made, according to appellant's evidence, in the usual course of business. One of these had been made to H. B. Millerton and corresponded with the check upon which the charge was based. Objection to the introduction of this evidence was sustained. It was shown that appellant had no opportunity of making out this exhibit after he had been notified of the charge against him. Under these circumstances the exhibits should have been admitted in evidence for consideration of the jury. Other assignments made, have been examined and found to be without merit.

The judgment of the trial court is reversed and the cause remanded for a new trial.

PER CURIAM:—The foregoing opinion by WESTHUES, C., in Division Two is adopted as the opinion of the Court en Banc. All the judges concur.

### On Motion for Rehearing.

WESTHUES, C.—The State has filed most exhaustive briefs in support of its motions for rehearing in this case and in the case of State v. Dollarhide, 333 Mo. 1087, 63 S. W. (2d) 998, concurrently decided with this case.

It is urged that our opinion in each case, holding the giving of an instruction with reference to verbal statements made by defendants to be reversible error, is in conflict with prior decisions of Division Two of this court and with a decision by the court en banc. From the learned brief of the Attorney-General in the Dollarhide case we find that the seed from which instructions of this nature grew was planted into our Missouri practice in the case of Green v. State, 13 Mo. 382, l. c. 392, where the following instruction was approved:

"In receiving the declarations of the prisoner, the jury ought to take the whole of them into consideration, and may believe that part, which charges the prisoner, and reject that which is in his favor."

As tall oaks from little acorns grow, so lengthy instructions grew out of the short and concise instruction approved in the Green case. The instructions seem to have taken two definite forms. The one that was condemned in this and the Dollarhide case, which we will refer to as the modified form, is in substance as follows:

"The jury are instructed that any verbal statements of the defendant that have been proven in this case, you may take them into consideration, with all the other facts and circumstances proven.

What the evidence may show you, if anything, that the defendant has said against himself, is presumed to be true, because against himself; but anything you may believe from the evidence the defendant said in his own behalf, you are not obliged to believe, but you may treat the same as true or false, just as you believe it true or false, when considered in its relation to all the other facts and circumstances in the case.''

Instructions in similar form were approved in a number of cases that will be discussed later in this opinion.

Another form of instruction, which has been more often given, is similar to the one found in State v. Knowles, 83 S. W. l. c. 1092, 185 Mo. 141, and reads as follows:

''The court instructs the jury that if you believe, from the evidence, that the defendant made any statements in relation to the crime charged against him, *the jury must consider such statements all together. The defendant is entitled to the benefit of what he said for himself, if true;* and the State is entitled to the benefit of anything he said against himself in any statements proven by the State. What the defendant said against himself the law presumes to be true, because said against himself; what the defendant said for himself the jury are not bound to believe, because it was said in statements proved by the State. But the jury may believe it or disbelieve it, as it is shown to be true or false by the evidence in this cause. It is for the jury to consider, under all the facts and circumstances, how much of the whole statements the jury deem worthy of belief.''

The parts italicized are not contained in the form of the instruction above referred to as the modified form.

In searching the books for authority to sustain the giving of these instructions there is little to be found outside of this State. It is generally held that the giving of such an instruction is invading the province of the jury. In 1 Randall's Instructions To Juries, pages 87, 88 and 89 we read:

''As a general rule it is error to instruct, and proper to refuse to instruct, as to the weight and effect of the admissions of a party in a civil case, or of a defendant in a criminal prosecution, and instructions discrediting testimony as to the oral admissions of a party, or charging that it should be received with caution, or, on the other hand, that it constitutes satisfactory or strong or conclusive evidence, are erroneous, and properly refused. An instruction in a criminal case that the law presumes that what accused said against himself is true, while what he said for himself the jury are not bound to believe, is erroneous as on the weight of the evidence. In one jurisdiction, however, it is held that when, in a criminal prosecution, evidence introduced is entitled to less or more weight than ordinary evidence, such as extrajudicial statements of defendant tending to

establish his guilt, an instruction as to how such evidence must be weighed is proper as one on a point of law. . . ."

The one jurisdiction referred to as authorizing the instruction is Missouri. In 16 Corpus Juris, page 927, section 2287, it is said:

"After a confession is admitted, it is the province of the jury to pass upon its credibility and weight."

Many authorities are cited in support of the text in Randall's Instructions To Juries and Corpus Juris.

Our own court has also leveled some harsh criticisms against these instructions. Note what this court had to say in State v. Thomas, 250 Mo. 189, 157 S. W. l. c. 339:

"In the opinion of the writer there is grave doubt as to the propriety or necessity of trial courts giving any instruction attempting to define the weight to be given to oral admissions or confessions against interest. Such instructions violate the plain letter and spirit of Section 5244, Revised Statutes 1909, prohibiting courts from commenting upon evidence. We doubt if any citizen of Missouri was ever selected for jury service who was so grossly ignorant as not to understand that a statement against interest coming voluntarily from the mouth or pen of a litigant should be treated as true. We are aware of the long-established custom in this State of giving instructions defining the weight to be given to oral admissions against the interest of the party making same, and we would hesitate to reverse a case solely for an error of that character, but we believe trial courts should construe only legal documents and leave juries untrammeled in weighing oral evidence."

In the above case the court held erroneous and reversible error the giving of an instruction in the identical form as that given in this case. There was this difference in the evidence. A confession of defendant had been introduced in evidence, while in this case and the Dollarhide case evidence was introduced of verbal incriminating statements made by the defendants.

See, also, State v. Hudspeth, 51 S. W. l. c. 487, 150 Mo. 12, where this court in no uncertain terms condemned an instruction which read as follows:

"The court instructs the jury that if you believe any statements of the defendant have been proven by the State, and not denied by the defendant, they are taken as true."

The court in part said:

"By this instruction the court invaded the province of the jury, and decided for them the weight of the evidence and the credibility of the witnesses, whereas, under our Constitution and laws, it is the exclusive right and duty of the jury to pass upon the witnesses and the weight of testimony. If this instruction be law, then the jury may be required to accept that as truth which under their oaths they may believe to be falsehood. It was a maxim of the common law

'that with respect to the question of law the jury must not respond, but only the judges, and as to questions of fact the judges must not respond, but only the jury.' [Broom, Leg. Max. 80; Co. Litt. 295b.]''

The oldest case cited in the motion for rehearing that approved an instruction in a modified form, which omitted the elements that the jury must consider the statements of a defendant altogether and that the defendant is entitled to the benefit of what he said in his own behalf, if true, is State v. Sattley, 131 Mo. 464, 33 S. W. 41. The instruction is not set out in the opinion. The Attorney-General has obtained the form from the files of the case. As pointed out in the original opinion, the instruction approved in the cases cited in support of the instruction in that case had in it the two elements mentioned. No consideration whatever was given to the instruction except to say it had been approved so often "that we must decline to enter upon its defense." As noted, the cases cited in support thereof do not approve an instruction as given in that case. [The same may be said of State v. Tobie, 42 S. W. l. c. 1079 (7), 141 Mo. 547, and State v. Hudspeth, 159 Mo. 178, 60 S. W. 136, and State v. Sharpless, 111 S. W. 69, 212 Mo. 176.] In State v. Cushenberry, 157 Mo. 168, 56 S. W. 737, the instruction approved was not considered at all in the course of the opinion. In State v. Davis, 226 Mo. 493, 126 S. W. 470, the court contented itself by citing Green v. State, supra, and State v. Darrah, 152 Mo. 522, 54 S. W. 226. In the Darrah case the court en banc approved an instruction in the modified form. It cited the Sattley case and the cases cited in support of the Sattley decision. No consideration was given the particular objections made to the instruction in this case. It will be noted that all of the rulings in support of the instruction in the modified form are based upon the Sattley opinion. The Sattley opinion gave no consideration whatever to the question and cited cases that did not support its ruling.

Neither was the question of whether the instruction invaded the province of the jury ever considered in any of the above cases approving the instruction. Nor did the court consider the points in question in State v. Lewis, 323 Mo. 1070, 20 S. W. (2d) l. c. 537. It is there stated that the instruction was not a comment on the evidence in the case because it made no reference to the testimony of the defendant. It cites State v. Hayes, 262 S. W. l. c. 1036, paragraph 5, as an authority for approving the instruction. However, the instruction in the Hayes case contained both elements which are omitted from the instruction referred to as the modified form. There may be other cases but all that have been examined, approving an instruction in the modified form, found root in the Sattley opinion. The instruction in the modified form is vicious. It deserves all of the criticism contained in State v. Thomas, and State v. Hudspeth, 51 S. W. l. c. 487, 150 Mo. 12, supra. Trial courts in criminal cases

always instruct the jury that they are the sole judges of the credibility of witnesses and the weight to be given their testimony. This instruction is proper. Under our Missouri practice it is the settled law that the jury are the sole judges of the credibility of witnesses and the weight to be given their testimony. This needs no citation of authority. If that is true what defense is there for giving an instruction telling the jury what weight they must give to verbal statements or confessions made by a defendant? Does this instruction leave the jury unhampered in their deliberations as to what weight they are to give to the evidence? We think not. Does not the instruction lay particular stress upon certain evidence and does it not minimize other evidence? The instruction as given in the modified form is certainly prejudicial to the rights of a defendant. In Illinois and some other states instructions are approved that tell the jury that if the State has introduced evidence of verbal statements made by a defendant they must give as much weight to the statements that are favorable to a defendant as those that are detrimental. [See Burnett v. People, 204 Ill. 208, 68 N. E. 505.]

The form of the instruction, as given in the Hayes case, supra, which tells the jury that they must consider the whole of a defendant's statement or statements and that the defendant is entitled to what is said in his own behalf, if true, is not nearly so objectionable or prejudicial to the defendant as the modified form. We think it also invades the province of the jury, as to what weight they should give to the testimony, and should not be given. The giving of such an instruction, however, as in the Hayes case, may be harmless error.

In concluding we desire to add our approval to the criticisms made of the instruction in the modified form found in State v. Thomas, supra, and State v. Hudspeth, 51 S. W. l. c. 487, 150 Mo. 12. We cannot escape the conclusion that such an instruction is prejudicial to a defendant. It follows, therefore, that the ruling in State v. Sattley and similar rulings in other cases, approving an instruction in the modified form, are not sound and those cases should be and are hereby overruled on the point in question. The motion for rehearing is overruled.

PER CURIAM:—The foregoing opinion by WESTHUES, C., on motion for rehearing, is adopted as the opinion of the Court en Banc. All the judges concur.