STATE of Missouri, Respondent,

v.

Louis W. DePOORTERE, Appellant.

No. 45690.

Supreme Court of Missouri,
Division No. 1.

July 8, 1957.

W. H. Howery, Kansas City, for appellant.

John M. Dalton, Atty. Gen., and Fred L. Howard, Asst. Atty. Gen., for respondent.

DALTON, Judge.

Defendant was convicted of forgery, second degree (selling a forged check with intent to have it passed) and he was sentenced to imprisonment in the state penitentiary for a term of two years. See Sections 561.090 and 561.330 RSMo 1949, V.A.M.S.; Section 561.011 RSMo 1955 Supplement, V.A.M.S. He has appealed in due form.

The information filed in the Circuit Court of Jackson County on July 27, 1955, charged that on June 11, 1955, the defendant had in his custody and possession a certain forged and counterfeited check for $74.19, dated June 11, 1955, purporting to have been made by James L. Blackwood, payable to Louis W. DePoortere and drawn on the Westport Bank of Kansas City, Missouri and, well knowing the check to be falsely made, forged and counterfeited, the defendant on June 11, 1955, unlawfully and feloniously with intent to injure and defraud, did sell and deliver said check to Robert Hall Clothes, Inc., for the consideration of $74.19, with intent to have the same uttered and passed. The information conforms to the statute, Section 561.090, supra, and it is sufficient in both

form and substance. State v. Taylor, Mo. Sup., 274 S.W. 47; State v. Patterson, Mo. Sup., 20 S.W. 9.

The State's evidence tended to show that James A. Blackwood of the firm of Blackwood and Company, composed of James A. and Elmer Blackwood doing business at 4304 Bell Street in Kansas City, Missouri, closed his place of business at 5:00 o'clock p.m., Saturday, June 11, 1955, and locked the doors. The business place remained closed until Monday, June 13, 1955. About 8:30 a.m. on that date Mr. Blackwood noticed that the file drawer of the cabinet in the office was standing open and he discovered that a check protecting machine and a check book containing quite a few blank checks were missing. The check protector was used to imprint the amount of a check and to imprint the name "Blackwood and Company." The missing blank checks were numbered from 5728 to 6006, inclusive, and were intended for use in paying for supplies. The witness identified State's Exhibit No. 1 as one of the missing checks, to wit, No. 5762, which had the company name printed on the check and now had the company's name imprinted (cut in the paper) by the check protector and also showed an amount imprinted. The check showed the name James L. Blackwood written on the bottom line, but it was not Mr. Blackwood's correct name, nor his signature and the handwriting on the check was not his. He had never given anyone authority to sign his name to any check, or his permission to remove the check protector or the blank checks from the company office. The check, offered in evidence, purported to be payable to Louis W. DePoortere and was endorsed in that name, with the address "306 Golden Lane, Inde," added. Defendant had never been employed by Blackwood and Company, nor had they had any employee by that name.

Other evidence on behalf of the state tended to show that, on the evening of June 11, 1955, the defendant appeared at a store of Robert Hall Clothes, Inc., located at 2801 Troost Avenue, in Kansas City,

where one Henry Zwern was manager and supervisor, and in complete charge of the merchandise. Defendant made a purchase and presented State's Exhibit No. 1, hereinbefore described, dated June 11, 1955, payable to Louis W. DePoortere and drawn on the Westport Bank, Kansas City, Missouri. The salesman to whom the check was presented brought the bill for the merchandise and the check to Mr. Zwern who thereupon went to defendant and asked for identification. Defendant presented a driver's license in which the name and address shown corresponded with the name of the payee and with the name and address the defendant "had put on the back of the check." Defendant gave as his reason for having the check that he was employed by Blackwood and Company. Mr. Zwern "OK'd the check" and it was accepted and cashed. The check was deposited by the Clothing Company and returned by the bank unpaid, and no payment was thereafter received from defendant or anyone else. On cross-examination Mr. Zwern said he could not swear that he saw defendant write the endorsement on the check, but it was his custom to see such checks endorsed; and that the check, the identification papers and defendant were before him when he OK'd the check. Mr. Zwern initialed the check after defendant had signed. Mr. Zwern positively identified defendant as the person who presented the check, identified himself as an employee of Blackwood and Company and received the $74.19 or its equivalent. Mr. Zwern next saw and identified defendant when called to the police station about ten days after the check was accepted by him. Other evidence tended to show it was June 27, 1955. He immediately picked defendant out of a group of seven or eight men (he didn't count them) that were brought out on the platform for identification. Only a short space of time had been used in looking at the check when presented. Just enough to see if it was in regular form, observe the party presenting it, and to check the documents presented by the party for identification purposes. Mr. Zwern said he remembered defendant's face and he had described defendant to the police, after the check was returned unpaid, as being "approximately five eight, weighed about 150 to 160, light colored hair, wearing a shirt and trousers; no coat."

We need not at this time review defendant's evidence, except to say that he denied being in the store or having anything to do with the check.

At the close of all the evidence defendant filed a motion for judgment of acquittal. 42 V.A.M.S. Supreme Court Rule 26.10. The motion was overruled and appellant now insists that the verdict is not supported by substantial evidence.

Appellant's brief concedes that "perhaps there is not a total failure of evidence in this record," but appellant says the evidence "is so weak as to infer that the verdict was a result of prejudice and partiality." He says that, "although Henry Zwern is positive in his identification of defendant," his uncorroborated identification does not constitute substantial evidence against defendant. Reference is made to the fact that Zwern admittedly spent less than a minute handling the alleged transaction with defendant; that he possibly cashed 100 checks on Saturday; that he could not definitely say that the check was endorsed in his presence; that he didn't notice whether the party presenting the check had a receding hairline or not; and that no such matter was mentioned to the police. Nothing was said to the police about the party being practically bald, as defendant described himself before the jury. Zwern's statement to the police on weight, 150 to 160 pounds, did not correspond to defendant's testimony before the jury that at trial time he weighed 142 to 143 pounds. Zwern could not remember the name of the salesman that had made the sale (some eight or ten were employed) and presented the party, the check and sales-slip to him, nor could he name the items purchased according to the sales-slip. Zwern also disagreed with the defendant and State's witness

Graham as to how many men (they said four) were in the line-up at police headquarters when defendant was identified by Zwern as the person who had presented the check in question. Zwern also testified that the check was deposited on Monday, June 13, 1955, or perhaps Tuesday, but the bank endorsement stamped on the check showed June 15, 1955.

Appellant relies on a quotation appearing in the opinion in State v. Goodwin, 333 Mo. 168, 61 S.W.2d 960, 961, as follows: "The rule * * * is that before this court will relieve on the ground that the verdict is not supported by the evidence, there must be either a total failure of evidence, or it must be so weak that the necessary inference is that the verdict is the result of passion, prejudice or partiality." Appellant also cites State v. Kelsay, Mo. Sup., 228 S.W. 754, and State v. Brown, 290 Mo. 177, 234 S.W. 785, but these cases merely hold that, when there is no substantial evidence to sustain a verdict of guilty in a criminal case, the conviction must be set aside.

■ We think the State's evidence as heretofore reviewed was sufficient to sustain the verdict. See State v. Thompson, 318 Mo. 623, 1 S.W.2d 151; State v. Patterson, Mo.Sup., 20 S.W. 9. The credibility, weight and value of the testimony were for the jury. Witness Zwern insisted that it was, "Just that I remembered his face", and he immediately identified defendant in the line-up at the police station and at the trial. He also recalled that the party presenting the check was wearing a light colored shirt and dark trousers, no coat, but had light hair.

While defendant denied that he had ever been in the Robert Hall Clothes, Inc., store in his life, he gave his name as Louis W. DePoortere and said he had formerly lived at 306 Golden Lane, Independence; and that he had moved to Kansas City in February 1955. His driver's license was in evidence showing his name and the Golden Lane address. Defendant testified that the endorsement on the check in question was not similar to his genuine signature on cancelled checks and documents offered in evidence by him. Just before June 11, 1955, defendant had been staying with friends near 1020 North Spring Street (his parent's home) in Kansas City. He said he was at the home of Mr. and Mrs. William Woods on the evening of June 11, 1955. He gave his trade as gunsmith and said he had his shop in the basement at his parents' home and said he had been employed by the Sheffield Steel Company until May 1955. He had not been out of work in June, because he had been working on guns in his shop. He said he drew 50 per cent service disability from the government.

The essential elements of the crime charged fully appear from the State's evidence, to wit, that the check was forged, counterfeited and falsely made; that the blank form of the check had been wrongfully removed from Blackwood and Company's office the same evening it was passed; that the check purported to be made by James L. Blackwood and was drawn on the Westport Bank of Kansas City; that it was sold for a consideration by defendant to the Robert Hall Clothes, Inc., with the intent to have it uttered and passed, and the inference of fact that the defendant knew it was forged, counterfeited and falsely made could be drawn from the evidence in the record. See State v. Thompson, supra; State v. Taylor, supra.

Appellant contends that the court erred in allowing the state to offer evidence "of independent crimes of burglary and stealing," which had no bearing on the issues of the trial.

After witness James A. Blackwood had testified without objection that he had closed his place of business and personally locked up at 5:00 p.m., Saturday, June 11, 1955 and that the place of business had remained closed until about 8:00 a.m. on Monday, June 13, 1955, he was asked if he "noticed anything unusual" when he

opened his place of business. Over the objection that the evidence called for "would be incompetent, irrelevant and immaterial," the witness said he noticed that the file drawer of the cabinet was open and the check protecting machine and a check book containing blank checks were missing. Later he gave the check numbers of the missing blank checks and identified State's Exhibit No. 1, which bore No. 5762, as one of the missing blank checks. He also said he had given no one authority to remove the blank company checks from the office. On cross-examination he stated he was not contending that defendant broke into his place, since he didn't know who did it.

■ Appellant insists that the evidence admitted over objection had no bearing on the offense charged, or on any issue connected therewith. Appellant cites State v. Tunnell, Mo.Sup., 296 S.W. 423; State v. Shilkett, 356 Mo. 1081, 204 S.W.2d 920; State v. Thompson, Mo.Sup., 280 S.W.2d 838. The Tunnell case states the rule that "relevant facts and circumstances which tend to establish any of the constitutive elements of the crime of which the defendant is accused in the case on trial, even though such facts and circumstances tend to prove the defendant has committed other crimes, are admissible." [296 S.W. 427.] The Shilkett case states that "proof of the commission of separate and distinct crimes is not admissible, unless such proof has some legitimate tendency to directly establish the defendant's guilt of the charge for which he is on trial." 204 S.W.2d 920, 923. We think the evidence in question was properly admitted as tending to show that the blank form of the check in question had been stolen from the office of Blackwood and Company only a few hours before the forged check was presented and cashed at the Robert Hall Clothes, Inc., store by the defendant. This evidence tended to show defendant's knowledge that the check was forged and counterfeited and his intent to have it passed. The evidence was material to the issues being tried.

See State v. Bell, 212 Mo. 130, 111 S.W. 29; State v. Spaugh, 200 Mo. 571, 594, 98 S.W. 55; State v. Morro, 313 Mo. 114, 280 S.W. 697, 700; State v. Stark, 202 Mo. 210, 222, 100 S.W. 642; State v. Hodges, 144 Mo. 50, 53, 45 S.W. 1093; 22 C.J.S. Criminal Law, § 691(k), page 1135.

■ Appellant further contends that the court erred in permitting the State's witness Zwern to corroborate his identification of the defendant by testimony of an alleged additional identification of the same defendant. Appellant says that this was an improper attempt by the state to substantiate an identification and that it permits a witness to corroborate himself at the same time. No authorities are cited. The record shows that, after the witness Zwern had testified concerning the presentation of the check in question by defendant, he was asked when he next saw the defendant. The witness answered, "At the time I was called down to the police station, he was brought up on a platform for identification and I recognized him again." Defendant objected and moved to strike the part about prior identification on the ground that the answer was self-serving and was not material to any issue on trial. The objection and motion to strike were overruled and the fact of the identification of defendant at the police headquarters was again shown. The court did not err in admitting the evidence, nor in refusing to strike it from the record. It appears that Zwern saw defendant but a brief time when the offense was committed and the fact that shortly thereafter he saw and recognized him was admissible to aid the jury in determining the value of Zwern's identification of defendant. State v. Buschman, 325 Mo. 553, 29 S.W.2d 688, 692, 70 A.L.R. 904; State v. Nolan, Mo.Sup., 171 S.W.2d 653, 655. In the Buschman case, supra, 29 S.W.2d 688, 692, the court said: " * * * it was competent for the witness to testify that he saw and recognized defendant the day after the robbery. Such evidence was not a bolstering of the witness' testimony by proof of extrajudicial declarations or

acts. It was merely proving facts and circumstances calculated to enable the jury better to weigh and determine the value of the witness' testimony as to identification."

 Appellant further assigns error on the court's refusal to admit in evidence a credit card bearing, as he claimed his genuine signature. Many documents, including 42 cancelled checks of the defendant, were already in evidence, all purporting to bear the authentic signature of the defendant. The particular exhibit was not timely presented and it was excluded on the ground that it was offered in "an effort to rehabilitate this witness." The matter of additional cumulative evidence was within the court's discretion and no abuse of that discretion appears. Steffen v. Southwestern Bell Telephone Co., 331 Mo. 574, 56 S.W.2d 47, 48. Further, in this case, no issue was presented as to whether either the check or the endorsement was in the handwriting of the defendant. Such proof was unnecessary to prove the charge and witness Zwern said he could not swear that he saw defendant endorse the check.

The final assignment is that "the court erred in failing to instruct the jury on the law of issuing a check with intent to defraud, a misdemeanor, when the facts of the case were sufficient to support a finding of either a felony or a misdemeanor." Appellant's theory, as shown by his motion for a new trial is that "the facts would have been sufficient to support a finding of either a felony or a misdemeanor." If appellant means to refer to Section 561.460 RSMo 1949, V.A.M.S., concerning checks or drafts drawn when funds are insufficient, it is apparent that the facts in evidence in this case constitute no offense under that statute and they form no basis for an instruction under that statute. The proof here, however, does conform to the offense set forth in Section 561.090 RSMo 1949, V.A.M.S., under which the cause was submitted and a verdict of guilty returned. As stated, defendant's theory

was that he had had nothing whatever to do with the check; that he had never been in the store where it was cashed; and that he was not involved in any manner. The court did not err in failing to instruct under Section 561.460, supra.

The information was sufficient in form and substance, as stated, the verdict was in proper form and responsive and the punishment was within the range provided by statute. Allocution was afforded and judgment and sentence duly entered and pronounced.

The judgment is affirmed.

All concur.